USCA1 Opinion

 

 September 17, 1992 [NOT FOR PUBLICATION] ____________________ No. 92-1415 SAMUEL RIVERA VELEZ, Plaintiff-Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ _________________________ appellant. Daniel F. Lopez-Romo, United States Attorney, Jose Vazquez ______________________ ______________ Garcia, Assistant United States Attorney, and Jessie M. Klyce, ______ _________________ Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant contends that he has been ___________ totally disabled since February 1988 due to asthma. The Secretary, adopting the ALJ's opinion, disbelieved claimant's account of severe, daily asthma attacks and concluded claimant could do various light, unskilled jobs described by the vocational expert (VE) which are performed in a clean, temperature controlled environment and allow for change of position. Claimant's principal argument is that the ALJ erred in disbelieving claimant's account of severe, daily attacks and in concluding that claimant's asthma permitted him to work. We review the evidence. I _ Claimant, born in 1950, has had asthma since childhood. He started working in 1969 and continued for several years, but then applied for disability. That first application was denied in 1979. After several years of unemployment, claimant resumed working in 1984, first as a cable cutter and later as a forklift operator in Massachusetts. He claims that his asthma worsened so that he could no longer work and that a doctor advised him to move to Arizona. Claimant instead moved to Puerto Rico in February 1988. He has not worked since. While claimant claims that a doctor advised him to move to Arizona because of his asthma, claimant furnished no statement from a doctor to that effect. Rather, the -2- Massachusetts records consisted of three hospital admissions (June 1986 and May 1987 admissions because of asthma attacks and a July 1987 admission for a back muscle strain) and a pulmonary questionnaire completed by a doctor who had treated claimant's asthma in June and July 1986. The doctor noted that claimant had not returned for follow-up. In other words, prior to claimant's February 1988 move to Puerto Rico and at a time when claimant was working, only two asthma attacks, approximately eleven months apart, were documented. So far as appears, claimant underwent regular treatment only for a two-month period following the first attack. The lack of regular treatment, the infrequency of documented attacks, and the failure of claimant to produce a statement from the doctor who allegedly advised claimant to move suggest that claimant's cessation of work and move to Puerto Rico may not in fact have been prompted by claimant's asthma. The next documented hospitalization due to asthma was for several days in May 1988. Claimant responded to treatment, and, at discharge, the treating physician checked off a box reading, "Person can perform moderate work, as his medical condition does not substantially affect him." Claimant was treated in hospital emergency rooms for his asthma twice in 1988 (August and October). -3- Claimant applied for disability benefits in late September 1988. No difficulty or shortness of breath was observed by the agency personnel. In November 1988, claimant was evaluated by Dr. Pou for the purpose of determining eligibility for disability benefits. Claimant reported daily attacks and continuous severe respiratory impairment. Dr. Pou noted that at the beginning of the interview claimant breathed regularly without distress, but towards the end he had a coughing spell which terminated in severe respiratory distress with wheezing. Dr. Pou diagnosed "bronchial asthma with severe bronchospasm and chronic obstructive pulmonary disease." Pulmonary function tests showed "markedly diminished" maximum voluntary ventilation, forced expiratory volume and forced vital capacity "due to severe bronchial obstructive disease." A nonexamining doctor, reviewing the record up to this point, concluded claimant's asthma was not disabling as claimant had not required frequent emergency treatment or suffered a severe loss of pulmonary function capacity. A lung specialist at a hospital evaluated claimant in December 1988. Claimant reported that he had constant shortness of breath and frequent attacks. The doctor stated without explanation or elaboration that the asthma was totally disabling. -4- A pulmonary function test conducted in December 1988 by a nontreating physician, Dr. Reyes, was within normal limits. In 1989 there were four emergency room visits because of asthma attacks. Oxygen and various medications were administered. A nonexamining physician reviewing the medical evidence through April 1989 concluded that claimant's condition was not disabling. Vitalograph Spirometry Data compiled by Dr. Rogelio Gonzalez, claimant's treating physician, in May 1989 showed a "severe restrictive and moderately-severe obstructive ventilatory impairment." In December 1989, claimant was hospitalized eight days for asthma and bronchitis. At discharge, lungs were clear and claimant had no cough or respiratory distress. Prognosis was "fair." In April 1990, claimant's treating physician, Dr. Rogelio Gonzalez, submitted a report. He recited claimant's report of "almost daily acute asthmatic attacks . . . lasting 2-3 hours" which, at least twice a month, did not respond to home medications and required emergency room treatment. Dr. Gonzalez noted scattered rhonchi and expiratory wheezes and conducted a pulmonary function test which was "compatible with a moderate restrictive and very severe obstructive -5- ventilatory impairment." Dr. Gonzalez stated that claimant had to be treated by him once or twice a month, but did not submit any records of these office visits. Dr. Gonzalez opined as early as October 1988 that claimant was disabled from work. Hospital records for 1990 (Hospital Dr. Alejandro Otero Lopez) are difficult to read, but appear to show three out-patient visits. Claimant testified as follows. He stopped working in 1988 because his condition deteriorated necessitating continuous treatment and medication. The change in climate to Puerto Rico did not help and attacks continued. Attacks occur two to three times a week, last from a half hour to an hour, and leave claimant fatigued for hours. At home, claimant uses a therapy machine two to three times a week, sometimes as often as twice a day. His medications make him nervous, aggressive, and interfere with his sleep. Claimant, who was educated through sixth grade and who has worked for years in various jobs including taxi driving, purported not to know how much one plus one or three plus three are, answering three and five to these questions from the ALJ. The ALJ concluded that claimant's asthma limited him to light work in clean, temperature controlled environments, but did not disable him totally from working. -6- The ALJ acknowledged that the pulmonary function tests performed by claimant's treating physician, Dr. Gonzalez, had shown severe restrictive and moderately severe obstructive ventilatory impairment, but pointed out that the December 1988 spirometry test performed by a different doctor had been within normal limits. With respect to claimant's claim of frequent severe attacks, the ALJ noted the infrequency of documented hospitalizations and discounted claimant's account. II __ The ALJ was not required to accept claimant's allegation of severe, daily attacks. Claimant's credibility was suspect, for significant allegations he made were not borne out by the record. For example, he claimed a doctor in Massachusetts advised him to move, but produced no such report from the doctor or even a history of regular treatment while in Massachusetts. He claimed bi-monthly emergency room visits, but again, the record did not support the allegations. And, he, a former taxi driver, denied the ability to do simple addition, a skill essential to making change. All in all, the ALJ could supportably conclude that claimant exaggerated, depicting himself as much less able than he was. Claimant contends that the treating physician's report of total disability is uncontradicted and therefore -7- must prevail. In rejecting it, the ALJ substituted his own medical opinion, claimant maintains. Claimant is wrong. First, Dr. Gonzalez's report reflects a history recited by claimant of almost daily attacks and bi-monthly emergency room treatment, which is not borne out by the record. The record shows two emergency room visits in 1988 (plus one hospitalization) and four in 1989, substantially fewer than claimant claimed. As the information given to Dr. Gonzalez was significantly inaccurate, the ALJ was not required to accept his opinion. Second, as the ALJ pointed out, the evidence was conflicting. For instance, pulmonary function test results varied, and one was normal.1 The doctor who discharged claimant from the hospital in May 1988 wrote that claimant could do moderate work, and nonexamining doctors concluded the asthma was not disabling. The ALJ could properly reject Dr. Gonzalez's opinion and conclude on the record as a whole that claimant retained the ability to do light work in clean environments. Claimant's contention that the ALJ did not adequately consider the side effects of claimant's medication ____________________ 1. Claimant asserts that the pulmonary function tests with adverse results were more complete than the one with normal results administered by Dr. Reyes. We note that a nonexamining doctor had the benefit of both Dr. Reyes' normal findings and the test conducted by Dr. Pou which showed "markedly diminished M.V.V., FEV-1 and FVC due to severe bronchial obstructive disease," yet concluded that claimant's asthma was not disabling. -8- is wrong. The ALJ specifically acknowledged claimant's testimony that his medications make him nervous and agitated. There was no indication that claimant complained of the side effects to a doctor, and the ALJ was not required to conclude that the side effects were so deleterious as to preclude claimant from performing the light, unskilled jobs the VE identified. We have considered all of claimant's arguments and conclude that none warrant relief. Affirmed. ________ -9-